**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

RAFAEL GUERRERO, Esquire,
*Defendant-Appellant.*

No. 09-30066

D.C. No.
2:07-cr-02071-
WFN-3

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Wm. Fremming Nielsen, Senior District Judge, Presiding

Argued and Submitted
December 7, 2009—Seattle, Washington

Filed February 18, 2010

Before: Robert R. Beezer, Ronald M. Gould, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman;
Dissent by Judge Gould

**COUNSEL**

Dan B. Johnson, Law Offices of Dan B. Johnson, Spokane, Washington, for defendant-appellant Rafael Guerrero.

Gregory M. Shogren (argued), Shawn N. Anderson, United States Attorney's Office, Yakima, Washington; James A. McDevitt, United States Attorney, for plaintiff-appellee United States of America.

---

**OPINION**

TALLMAN, Circuit Judge:

Defendant-Appellant Rafael Guerrero appeals his jury conviction for conspiracy to possess a listed chemical with intent to manufacture. After the jury was selected and sworn and jeopardy attached, Guerrero raised a *Batson* objection to the prosecutor's use of peremptory challenges to strike two minority jurors. The district court held an abbreviated hearing, denied the challenge, and the trial proceeded. Guerrero was convicted and now appeals, arguing that the district court's failure to follow all three steps of the *Batson* analysis entitles him to a new trial. Because we agree with the district court that there was no colorable basis to raise a *Batson* challenge, we affirm.

**I**

Rafael Guerrero was one of six individuals indicted in June 2007 for conspiring to possess pseudoephedrine with the intent to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(c) and 846. Guerrero and one of his co-defendants, Santos Mendoza, demanded a jury trial. Jury selection occurred on the morning of July 14, 2008.

Prior to voir dire, each juror had completed the standard-ized district court Juror Qualification Questionnaire. Information regarding the venire members' race/ethnicity was redacted from the copies of the Questionnaire provided to counsel. The district court conducted the bulk of the questioning during voir dire, asking each of the thirty-one venire members basic questions about where they were from, where they worked, and whether the nature of the case led any prospective juror to doubt his or her ability to be impartial. After the district judge finished questioning the venire, the prosecuting and defense attorneys each had a few minutes to ask follow-up questions.

At the close of voir dire, one juror was excused for cause and the parties exercised peremptory challenges. The clerk identified the fourteen jurors who remained after the strikes were exercised and assembled them into the panel. Each attorney was asked if the panel "appear[ed] to be proper." All three attorneys—the prosecutor, counsel for Mendoza, and counsel for Guerrero—agreed that it was and the jury was sworn.

Immediately thereafter, counsel for Mendoza approached the bench and raised a *Batson* challenge.[1] *See Batson v. Kentucky*, 476 U.S. 79, 89, 96-98 (1986). The following exchange then took place.

> THE COURT: What's the problem?
>
> MR. SCOTT [counsel for Mendoza]: Because I want to request—I want to make a *Batson* challenge. Counsel for the government has removed—counsel for the government has removed Mr. E.S., Juror No. 10,[2] as well as D.T., Juror No. 12, both of which

---

[1] Counsel for Guerrero joined in the motion after lunch. The government does not challenge the timeliness of the motion.

[2] Guerrero does not challenge the strike against Juror No. 10 on appeal. Thus, the analysis in this opinion is limited to Juror No. 12.

[sic] are minorities, and what has resulted is that we have a very white jury.

. . .

THE COURT: What about Miss D.T., Juror No. 12? Is she a minority?

MR. SCOTT: She looked like she may have some native American or Hispanic background. Person of color.

THE COURT: I didn't observe anything unusual of her, and I don't think she's the type of person that would be subject to *Batson* challenge.

MR. ANDERSON [the prosecutor]: I don't know how this particular one, Miss D.T., Juror No. 12, applies as far as a *Batson* challenge.

THE COURT: I deny the *Batson* challenges.

The court then took a lunch recess. After reviewing the juror questionnaires over lunch, the judge saw that Juror No. 12 identified herself as "Native Hawaiian/Pacific Islander" on her questionnaire. Following the recess, the district court revisited the *Batson* issue outside the presence of the jury.

THE COURT: Now, before we bring the jury in, Mr. Anderson, there was an issue raised as to a *Batson* challenge to one of the jurors, and apparently you challenged her. I think her name is Ms. D.T., Juror No. 12.

MR. SCOTT: I made the *Batson* challenge, Your Honor. Mr. Anderson struck her as one of the perempts.

THE COURT: Right. And I just thought you might want to make a record as to your justification for challenging her. I didn't pick up on the fact that she was a minority and subject to a *Batson*, but I have heard—somebody did say that she may have looked like she was. And then I looked at the questionnaire, and I see that there was a connection to Hawaii. She may have come from Hawaii or something. I'm not sure. But do you remember the reason?

MR. ANDERSON: To be honest with you, I didn't pick up on the minority aspect of it at all. I wasn't looking at that at the time.

THE COURT: What were you looking at?

. . .

MR. ANDERSON: I was going back and forth with my case agent, and we made the decision, I recall, to challenge her. And

. . .

MR. ANDERSON: It was because of the relation. I know she had relation [sic] in Hawaii that was in law enforcement. She also had relation [sic], it was my understanding from the questionnaire, a nephew that had been prior convictions [sic] for assault and battery. Just because of that mix, I thought it appropriate that I would exercise a challenge.

THE COURT: If there's anything you want to say to supplement that later on, after you've had a chance —

MR. ANDERSON: Thank you.

THE COURT: I think we're ready to bring the jury in.

The trial lasted two days. Neither the prosecutor nor counsel for Guerrero or Mendoza revisited the *Batson* challenge. On the second day of trial, the jury found Guerrero and Mendoza guilty on the sole count of the indictment. Guerrero was sentenced to 204 months in prison to be followed by three years of supervised release. The district court entered judgment on February 3, 2009. Guerrero filed a timely notice of appeal on February 11, 2009.

## II

**[1]** A prosecutor may not challenge potential jurors solely on account of their race. *Batson*, 476 U.S. at 89. The problem here is that there is no evidence that race played any role in the decision to strike the prospective juror because neither the prosecutor nor the judge recognized her as a minority. We think it particularly significant that both sides accepted the panel as drawn, the oath was administered to empanel the jury, and only then was the issue belatedly raised by defense counsel after jeopardy attached. We hold that Guerrero failed to state a prima facie case of discrimination sufficient to invoke *Batson*.

**[2]** A three-step burden shifting test is used to determine whether a potential juror was struck in violation of *Batson*. *Green v. LaMarque*, 532 F.3d 1028, 1029-30 (9th Cir. 2008). First, "the defendant must make a *prima facie* showing the challenge was based on an impermissible basis, such as race." *Id.* at 1029 (citing *Batson*, 476 U.S. at 96). If the defendant fails to present sufficient evidence to establish a prima facie case, the challenge may be denied and the court need not continue to step two. *Id.* at 1030. "Second, if the trial court finds the defendant has made a prima facie case of discrimination, the burden then shifts to the prosecution to offer a race-neutral reason for the challenge that relates to the case." *Id.* (citing

*Johnson v. California*, 545 U.S. 162, 168 (2005)). "Third, if the prosecutor offers a race-neutral explanation, the trial court must decide whether the defendant has proved the prosecutor's motive for the strike was purposeful racial discrimination." *Id.* (citations omitted).

**[3]** To state a prima facie case of discrimination at step one a defendant must establish three elements: that "(1) the prospective juror is a member of a cognizable racial group, (2) the prosecutor used a peremptory strike to remove the juror, and (3) the totality of the circumstances raises an inference that the strike was motivated by race." *United States v. Collins*, 551 F.3d 914, 919 (9th Cir. 2009) (quoting *Boyd v. Newland*, 467 F.3d 1139, 1143 (9th Cir. 2006)). The government concedes that Juror No. 12 is a member of a cognizable racial group and that the prosecutor used a peremptory strike to remove her from the panel. Therefore, the only element of the prima facie case at issue is whether Guerrero raised an inference that the strike was motivated by race under the totality of the circumstances.

We review for clear error a district court's step one determination as to whether a defendant has stated a prima facie case of discrimination under *Batson*. *Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir. 1999) (en banc). A finding is clearly erroneous if it is "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.' " *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 577 (1985)).

Guerrero contends that the district court committed structural error when it invited the prosecutor to justify the strike of Juror No. 12, the traditional step two analysis, and subsequently failed to reach step three of the *Batson* analysis, as our case law requires. *See United States v. Alanis*, 335 F.3d 965, 967-68 (9th Cir. 2003) (holding that when a trial court

has reached step two of the *Batson* analysis, it must continue on to step three).

**[4]** Guerrero is correct that the district court did not clearly explain its reasoning for denying his *Batson* challenge. However, the court did rule, when the issue was raised, that defense counsel had failed to state a prima facie case of discrimination as to Juror No. 12 because the court did not believe that *Batson* applied to that juror. After lunch, out of what appears to be an abundance of caution, the district court asked the prosecutor why he had stricken Juror No. 12. We do not interpret this brief questioning as a reversal of the court's previous ruling that the defendant failed to establish all three elements of the prima facie case at step one. Nor do we hold that a district court judge may complete step two of *Batson* without continuing to step three, in violation of *Alanis*, 335 F.3d at 967-68. We limit our analysis to evaluating whether, under the totality of the circumstances, Guerrero presented enough evidence of discrimination to establish a prima facie case at step one. Here, it appears that the district court wanted to ensure that the prosecutor had a legitimate reason for striking Juror No. 12 before continuing with the trial. This further investigation into the totality of the circumstances surrounding the strike supports, rather than negates, the previous holding that Guerrero's *Batson* challenge failed to raise an inference of discrimination at step one.

**[5]** The conversation between the court and the attorneys makes clear that no one knew the race/ethnicity of Juror No. 12. The prosecutor did not recognize her as a minority at all. Counsel for Mendoza thought she might be a minority, but instead of Native Hawaiian/Pacific Islander he thought she was Native American or Latina. The record demonstrates that the court not only believed the prosecutor when he stated that he did not recognize Juror No. 12 as a minority, but the presiding judge also failed to recognize Juror No. 12 as a minor-

ity. The court explicitly stated, "I didn't pick up on the fact that she was a minority and subject to *Batson*."[3]

The dissent argues that we have allowed the prosecutor's claimed perception of Juror No. 12's race/ethnicity to control our step one analysis. That is not the case. We here examine the district court's analysis of the applicability of *Batson* under the three required elements of the prima facie case at step one. The totality of the circumstances supports the district judge's conclusion that Guerrero failed to state a prima facie case of discrimination under *Batson*.

[6] The district judge witnessed the prosecutor's behavior during voir dire and jury selection and was in a far better position than we are to evaluate whether the defendant raised an inference of discrimination regarding the prosecutor's strike of Juror No. 12. The totality of the circumstances here does not raise an inference that the prosecutor's strike of Juror No. 12 had anything to do with race. The district court's original ruling that Guerrero had failed to state a prima facie case at step one of *Batson* was, therefore, not illogical, implausible, or without support in the record. *See Hinkson*, 585 F.3d at 1262.

---

[3]The dissent contends that *Batson* applies when a person *is* a minority, not merely when they *look like* a minority and that in the modern world it can be difficult, if not impossible, to accurately identify the race/ethnicity of everyone we meet. We do not quarrel with that statement generally, but we note that *Batson* is predicated not on the potential juror's actual race/ethnicity, but on the prosecutor's perception of that race/ethnicity as the reason for striking an otherwise qualified venire person. This is true because *Batson* is seeking to cure government misconduct based on racial prejudice, not to simply guarantee an ethnically diverse jury. *See Batson*, 476 U.S. at 85 n.6 ("[T]hough the Sixth Amendment guarantees that the petit jury will be selected from a pool of names representing a cross section of the community, we have never held that the Sixth Amendment requires that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Indeed, it would be impossible to apply a concept of proportional representation to the petit jury in view of the heterogeneous nature of our society." (internal citations and quotation marks omitted)).

## III

**[7]** Guerrero failed to make a prima facie case of discrimination. Because he did not meet step one of *Batson* there was no need for the district court to continue on to steps two and three. There was no structural error. The challenge was properly denied.

**AFFIRMED.**

---

GOULD, Circuit Judge, dissenting:

The majority makes new and ill-advised doctrine on a matter that is properly resolved with a remand, after which the district court could honor the procedures required by *Batson*. The new rule adopted by the majority—that a *Batson* challenge will fail if the prosecutor says he or she does not recognize the struck juror as a minority—is inconsistent with the reasoning at the heart of *Batson*. This ill-advised rule evades and short circuits the evidence-producing process that trial courts implementing *Batson* need and have necessarily used to determine the existence of discriminatory intent, and that appellate courts likewise need fairly to review a *Batson* claim on appeal. *Batson* requires that the prosecutor offer a reason for a strike and that thereafter the district court make a finding whether the strike was a case of intentional discrimination, outlawed by *Batson* and inimical to the best interests of our society, or was made for a bona fide and legitimate reason. Because the majority's rule lets the prosecutor veto the entire and well-constructed *Batson* process merely by saying "I didn't think race was involved," I must respectfully dissent.

## I

The three-step *Batson* inquiry is a tool for producing the evidence necessary to the difficult task of "ferreting out dis-

crimination in selections discretionary by nature." *See Miller-El v. Dretke (Miller-El II)*, 545 U.S. 231, 238 (2005). A prosecutor is unlikely to admit candidly to striking a juror because of race. *Batson* recognized this, prohibiting the prosecutor from rebutting a *Batson* challenge "merely by denying that he had a discriminatory motive or affirming his good faith in making individual selections." *Batson v. Kentucky*, 476 U.S. 79, 98 (1986) (internal quotation marks and alterations omitted). The *Batson* Court observed, "If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause 'would be but a vain and illusory requirement.' " *Id*. (quoting *Norris v. Alabama*, 294 U.S. 587, 598 (1935)).

The logic of the *Batson* Court's step-two discussion applies equally to the prima facie determination at step one. A general assertion that the prosecutor did not recognize a juror as a minority should not halt the *Batson* inquiry. Rather, the trial court must consider "all relevant circumstances" to determine whether an inference of purposeful discrimination arises. *Id*. at 96. The relevant circumstances are many. Courts consider the percentages and order of minority strikes as compared to non-minority strikes. *See, e.g.*, *Miller-El II*, 545 U.S. at 240-41; *Paulino v. Castro*, 371 F.3d 1083, 1090-92 (9th Cir. 2004); *Wade v. Terhune*, 202 F.3d 1190, 1198 (9th Cir. 2000). The prosecutor's statements and questions during jury selection are also relevant. *Batson*, 476 U.S. at 97. An inference of discrimination could arise if minority jurors are questioned especially closely, or conversely if they are largely ignored. *See Fernandez v. Roe*, 286 F.3d 1073, 1079 (9th Cir. 2002). The same is true where a prosecutor poses markedly different questions to minority and non-minority jurors. *Miller-El II*, 545 U.S. at 254-63. A corollary source of evidence is the answers that jurors give. Where "nothing in the struck juror's voir dire responses intimated a legitimate basis for removal," it is more likely that the defendant will meet the "quite low" step-one threshold. *Boyd v. Newland*, 467 F.3d 1139, 1145, 1147 (9th Cir. 2006).

Analytical tools are useful at step one because they can reveal the possibility of an unspoken discriminatory motive. The majority indicates that it seeks to evaluate all the circumstances, but the majority employs none of these analytical tools, indeed it cannot do so fully in light of the state of the record, relying instead solely on the prosecutor's and judge's impressions of Juror No. 12's race.[1] While the prosecutor's avowal of ignorance of a stricken juror's race might be one appropriate consideration at step one, *see Fernandez*, 286 F.3d at 1079, the purpose behind the step-one inquiry is to develop evidence about the prosecutor's true motives, admitted or not.[2] The trial judge must weigh all the evidence at step one, and make findings of fact, so that a reviewing court can marshal virtually centuries of appellate experience in reviewing whether a fact finding was supported by the evidence. We should not turn *Batson*'s first step into a hollow exercise by allowing one piece of evidence—the prosecutor's claimed perception of a juror's race—to control, and thereby to sidestep all other tools, including a factual finding by the trial judge, that properly bear on whether discrimination was afoot.

---

[1]Given the written strike system used here, the timing of the *Batson* objection sheds no light on the presence or absence of discriminatory intent on the part of the prosecutor. The members of the jury were announced after the clerk compiled the written challenges. "The pattern of the prosecution's peremptory challenges might not have been apparent until the jury was selected, so the objection could not . . . have been raised much earlier." *United States v. Thompson*, 827 F.2d 1254, 1257 (9th Cir. 1987) (rejecting a tardy-objection argument made by the government in response to a *Batson* challenge). Here, the government did not challenge the timeliness of the *Batson* objection.

[2]In *Fernandez*, we were skeptical of "the prosecutor's claim that he did not know the ethnicity of the prospective jurors" because "their [Hispanic] surnames appeared on the [juror] questionnaires." 286 F.3d at 1079. In finding that the defendant had made out a prima facie case of discrimination, the court noted that it may not be proper to consider the prosecutor's explanations for strikes at step one. *Id.* Even if a prosecutor's claim not to have noticed a juror's race can be considered at step one, it still must be considered alongside all the other relevant circumstances, as it was in *Fernandez. Id.* at 1078-80.

## II

My second ground for disagreeing with the majority's holding is that it makes appellate review in cases like this one difficult or impossible. There is no sensible method for reviewing, on a cold record, a prosecutor's subjective statement that he did not notice a prospective juror's race. The majority takes some comfort from the fact that the trial judge shared the prosecutor's confusion about Juror No. 12's race, but the trial judge's perception about whether Juror No. 12 was a minority is equally unreviewable. How can we meaningfully evaluate, on appeal, whether Juror No. 12 "looked like" a minority, such that the prosecutor's claim not to recognize her race should be questioned? Should we require the appellate record to include photographs of the venirepersons? Must photographs be in color, or be of a certain type and quality? Are we to examine the prospective juror's surnames for evidence of ethnic heritage? If the prosecutor and trial judge agree that a juror is not a minority, is that always to be the end of the inquiry? Does this majority view make sense? Respectfully, I think not.

We are past the point as a society where minority-group membership properly can turn on the mere observational say so of a participant in the judicial process. If we as judges peer out into our crowded courtrooms, or if we as people observe others in the street or shops or businesses, are we really able to say who has a minority heritage and who has not by our observation? The whole point of Batson is that minority status can't be taken into account in jury selection when exercising peremptory challenges. A person with a minority heritage may bring valuable perspective to the factfinding process, and that is so whether or not the prospective juror "looks like" a minority to the prosecutor or trial judge.[3]

---

[3]It is interesting that as long ago as 1879, in *Strauder v. West Virginia*, 100 U.S. 303, 312 (1879), even in the aftermath of Reconstruction and with widespread antipathy toward blacks, the United States Supreme

The practical difficulties introduced by the majority's holding are demonstrated by the facts of this case. The trial judge and prosecutor apparently did not recognize Juror No. 12's minority status, and that may well have been true. But the defense attorney clearly did recognize the juror as being a member of a minority; he referred to her as a "person of color." That he did so recognize the potential juror as a minority is absolutely clear from the fact that he raised a *Batson* objection to her being struck from the jury. Other evidence of Juror No. 12's minority status, available to the district court at the time of the strike, was Juror No. 12's self-identification as a Native Hawaiian or Pacific Islander on her questionnaire. If the juror identified herself as a minority, and the defense attorney independently recognized that fact, these are two important reasons to think that the prosecutor conceivably might have recognized it, too. That is why the step three process should have been fully engaged with a factual determination by the trial court to resolve this matter.

I would credit the juror's self-identification as a Native Hawaiian or Pacific Islander on her questionnaire, which the district court reviewed during the lunch recess. The prosecutor and judge's joint error about Juror No. 12's race thus revealed, the district court should have simply resumed and completed the familiar *Batson* steps.

### III

My final point of disagreement with the majority regards the proper reading of the record below. I would not read this record creatively, as the majority has, to contain any "rul[ing]

Court recognized that a law barring blacks from juries was invalid. In doing so, the Court in part emphasized that the civil rights of the black defendants were at stake, not merely the political rights of the excluded jurors. *See, e.g.*, Michael J. Klarman, *From Jim Crow to Civil Rights*: *The Supreme Court and the Struggle for Racial Equality* 40 (2004).

. . . that defense counsel had failed to state a prima facie case" at step one. *See* Maj. Op. at 2580. One can search high and search low in every word uttered by the district court on this issue. Nowhere did the district court ever mention a "prima facie" case and suggest expressly or by implication, as the majority holds, that the defense counsel didn't present a "prima facie" case. I would call the abbreviated proceeding below what it was: a *Batson* hearing that was unmoored from the three-step process and that contained no findings at all.[4]

When the defense attorney raised the *Batson* objection, *Batson*'s procedures required the district court to determine whether the circumstances of the strike raised an inference of discrimination. *Batson*, 476 U.S. at 95. The district court skipped step one, however, and jumped to step two by asking the prosecutor, "What were you looking at?" in striking Juror No. 12. After the prosecutor gave his response at step two that Juror No. 12 had a relation to law enforcement and a nephew with criminal convictions, the district court stated, "I think we're ready to bring the jury in." The *Batson* inquiry thus abruptly ended without a ruling at step three.

It is a well-settled rule in this circuit that once the trial court reaches step two, the court "must always reach step three, because it is not until step three of the *Batson* process that the court 'determines whether the opponent of the strike has carried his burden of proving purposeful discrimination.' " *Paulino*, 542 F.3d at 702 (quoting *Yee v. Duncan*, 463 F.3d 893, 898 (9th Cir. 2006)); *see also Green v. LaMarque*, 532 F.3d 1028, 1031 (9th Cir. 2008) (reversing the denial of a habeas petition where the state court "failed to reach step

---

[4]While there was no express finding at any level, one might think that when the district court asked the prosecutor for reasons for making a strike, that indicates the district court had implicitly decided that a prima facie case was made sufficient for step one. Then, having proceeded to step two, the district court should have completed the process by assessing the answers given and making a finding of fact on whether a peremptory strike was tainted by discrimination.

three in the *Batson* analysis"); *United States v. Alanis*, 335 F.3d 965, 967 (9th Cir. 2003) (emphasizing that the trial court has a "*duty* to proceed to step three"). While the majority assures us that its decision is consistent with this rule, it does not explain how. To state my perspective simply: The district court went to step two by inquiring after the prosecutor's reasons for the strike, but having done so, the district court did not correctly follow through by making a finding at step three as to whether there was or was not purposeful discrimination. As applied here, in my view our precedent required that the trial court also reach step three.

Where the trial court prematurely ends the *Batson* process, the proper remedy is a remand for an evidentiary hearing so that complete findings can be made. *See, e.g.*, *United States v. Collins*, 551 F.3d 914, 923 (2009) (remanding for completion of the *Batson* steps); *United States v. Esparza-Gonzalez*, 422 F.3d 897, 906 (9th Cir. 2005) (same); *Fernandez*, 286 F.3d at 1079-80 (same). I would remand this case for the district court to answer the "critical question" of whether the prosecutor's justifications for striking Juror No. 12 are persuasive or are instead a pretext for purposeful discrimination. *See Miller-El v. Cockrell*, 537 U.S. 322, 338-39 (2003). If the district court is able sensibly to make step-three findings using the record, testimony from the attorneys, and the court's own recollection about this case, that might be a simple way to resolve the *Batson* procedural error. I therefore think a remand is the appropriate remedy. If, on remand, the district court has insufficient direct or circumstantial evidence to conduct the step-three analysis, I would direct it to vacate Guerrero's conviction and grant him a new trial because of the high import of enforcing the rule that the Supreme Court established in *Batson*. *See United States v. Alcantar*, 897 F.2d 436, 440 (9th Cir. 1990); *United States v. Thompson*, 827 F.2d 1254, 1262 (9th Cir. 1987).