JOINER, Judge,
concurring specially.
I concur in the main opinion. Although I agree with the main opinion’s conclusion that the law-of-the-case doctrine does not permit us to consider “the merits of the State’s argument that [Jason Michael] Sharp’s Batson [v. Kentucky, 476 U.S. 79 (1986),] claim is not properly before this Court,” 151 So.3d at 347 n. 2, I write separately to note that, were we writing on a blank slate, I would be inclined to agree with the State’s position. This case, in my opinion, illustrates the need for the Alabama Supreme Court to authoritatively end the practice of using plain-error review to initiate a Batson claim on appeal.
In this regard, I fully agree with the views expressed by Justice Murdock in Part A of his special writing in Ex parte Floyd, [Ms. 1080107, Sept. 28, 2012] — So.3d -, - (Ala.2012), regarding plain-error review of Batson[14] claims.
In his special writing in Floyd, Justice Murdock stated:
*372 “The greatest concern I have arising from my review of this case is the notion that, as a general rule, Batson inquiries may be initiated on appeal for the first time under a ‘plain error’ standard. A sound case can be made that the three-step evidentiary inquiry prescribed by Batson as a tool for ferreting out purposeful discrimination was intended only for use in ‘real time’ during the trial in which the alleged discrimination occurs and that the right to initiate a Batson inquiry is waived if not exercised contemporaneously with the selection of the jury and cannot be revived based on a plain-error review in an appeal after the trial is concluded.”
Ex parte Floyd, — So.3d at-(Murdock, J., concurring in the result). In explaining his reason for this position, Justice Murdock noted first that he “[had] found no federal cases in which the court has used a ‘plain error’ review to initiate a Batson inquiry on appeal when the defendant failed to initiate that inquiry during the trial.”[15] Id. He then cited several policy reasons in support of his conclusion, with which I also agree. Those policy reasons bear emphasizing here.
First is the reality that “in most cases, the type of inquiry contemplated by Batson simply cannot be undertaken in any meaningful way months or years after the trial. Pretrial research regarding jurors and real-time notes taken during voir dire may have been lost, and, more importantly, unwritten memories and impressions of body language, voice inflections, and the myriad of other nuances that go into striking jurors likely will have faded, not only for counsel, but also for the judge who must evaluate the positions of both the defendant and the prosecutor in the context of his or her own observations at trial (and who, in some cases, will have even left the bench in the meantime).”
— So.3d at-.
In the present case, this concern was not implicated to the extent it could be in other cases because, as the main opinion discusses, the trial court in fact remembered details such as the demeanor of particular veniremembers, and the prosecution was able to identify several reasons for its strikes of the individual jurors. Even so, as a former circuit judge I am aware of the near impossibility that a prosecutor or circuit judge — who has experienced hundreds of trials (possibly including many capital-murder trials) and interacted with thousands of jurors over a number of years — would remember the details surrounding the strikes of jurors for a trial that had concluded many months or even many years before.[16] Thus, I share Justice Murdock’s concern that the passage of time will often render a Batson inquiry impossible years after the fact.
The second concern Justice Murdock identified is that
*373 “without a general rule requiring the initiation of a Batson challenge at trial, counsel for a defendant charged with a capital offense might decide — and logically so — to take a ‘shot’ at getting a favorable verdict from a jury about which he or she has some doubts, secure in the knowledge that he or she can always raise a Batson objection on appeal and get a second ‘shot’ if things do not work out with the first jury. See generally, e.g., United States v. Pielago, 135 F.3d 703, 709 (11th Cir.1998) (‘The contemporaneous objection rule fosters finality of judgment and deters “sandbagging,” saving an issue for appeal in hope of having another shot at trial if the first one misses.’); United States v. Brown, 352 F.3d 654, 666 n. 12 (2d Cir.2003) (‘[W]e do not want to encourage lawyers to “test [their] fortunes with the first jury,” while knowing there will be a “second round in the event of a conviction.” McCrory [v. Henderson], 82 F.3d [1243,] at 1247 [ (2d Cir.1996) ].’).”

Id.

This case squarely implicates Justice Murdock’s second policy concern. I was not a member of this Court when it first considered Sharp’s direct appeal in 2008 — the same appeal that has yet to be finally resolved in 2013 — but I note that Sharp’s initial brief to this Court in 2008 listed only five issues for appellate review and included a total of slightly more than 20 pages of argument. ' In that brief, Sharp gave no indication that he thought a Batson violation had occurred. In the Alabama Supreme Court, however, Sharp — still represented by the same counsel who had represented him in this Court — filed a 94-page petition for a writ of certiorari seeking review on 29 separate issues. Although Sharp did not think the alleged Batson violation was plain enough to raise in the trial court or in this Court, it was the first issue he presented to the Alabama Supreme Court. That tactic — if indeed it was a tactic[17] — essentially bypassed this Court on its initial consideration of this appeal (a process that took more than a year) and has extended by years the review of Sharp’s case.[18]
The third policy concern that Justice Murdock identified
*374 “is the fact that the failure of the trial court to initiate a Batson inquiry simply is not an ‘error,’ plain or otherwise, by the trial court. ‘Error’ (that in turn might be deemed ‘plain error’ in an appropriate case) contemplates a mistake by the court. Specifically, it necessitates a decision by the court that deviates from a legal rule.
“ ‘The first limitation on appellate authority under [the federal plain-error rule] is that there indeed be an “error. ” Deviation from a legal rule is “error” unless the rule has been waived. For example, a defendant who knowingly and voluntarily pleads guilty in conformity with the requirements of Rule 11[, Fed.R.Crim.P.,] cannot have his conviction vacated by court of appeals on the grounds that he ought to have had a trial. Because the right to trial is waivable, and because the defendant who enters a valid guilty plea waives that right, his conviction without a trial is not “error. ” ’
“United States v. Olano, 507 U.S. 725, 782, 118 S.Ct. 1770, 123 L.Ed.2d 508 (1993).
“The decision whether to take advantage of the right to generate evidence for consideration by the trial court pursuant to the Batson procedure is a decision for the defendant, not for the trial court. It is a voluntary decision as to whether to invoke a procedural device that has been made available to defendants in the trial context. In this respect, it is not unlike a request for a jury trial itself or a request that the trial judge poll the jurors after a verdict is rendered, or even more analogous, a failure to conduct voir dire of a prospective juror. Not requesting it may be a strategic ‘mistake’ by defense counsel, but counsel’s mistake is not the trial court’s ‘error.’
“The lack of a request by defense counsel for a Batson review might well occur in the context of circumstances more than sufficient to create an inference of discrimination by the prosecution, yet the law allows for the possibility that defense counsel might have reasons for believing that a particular juror or the jury as a whole is acceptable or even that the jury as selected might be more favorable to his or her client than some entirely new jury chosen from an unknown venire. The fact that counsel intentionally or by oversight fails to use all the procedural devices available to him or her in the trial context does not somehow translate into some sort of error, plain or otherwise, on the part of the trial court.
*375 “Put differently, the mere existence of the condition that warrants the initiation of a Batson inquiry — a prima fade ease of purposeful discrimination — is not the condition that constitutes a reversible error. No criminal conviction has ever been discarded merely because this first step is satisfied, i.e., merely because an inference, of discrimination can reasonably be drawn from the circumstances presented; actual, purposeful discrimination must exist. This first step and, indeed, the entirety of ‘the three-step Batson inquiry has been described as merely ‘a tool for producing the evidence necessary to the difficult task of “ferreting out discrimination in selections discretionary by nature.” ’ United States v. Guerrero, 595 F.3d 1059, 1064 (9th Cir.2010) (Gould, J., dissenting) (emphasis added); see also United States v. McAllister, 491 Fed. Appx. 569 (6th Cir.2012) (to same effect) (not published in the Federal Reporter). As this Court has said, a Batson review ‘shall not be restricted by the mutable and often overlapping boundaries inherent within a Raison-analysis framework, but, rather, shall focus solely upon the “propriety of the ultimate finding of discrimination vel non.” ’ Huntley v. State, 627 So.2d 1013, 1016 (Ala.1992) (emphasis added).
“Thus, the ‘error’ that must exist to warrant disturbing the prosecutor’s peremptory strikes is actual, purposeful discrimination in the selection of the jury. It is this actual, purposeful discrimination then, rather than merely a prima facie case for such discrimination, that must be ‘plain’ in the trial-court record if we are to provide a defendant who fails to object timely to a prosecutor’s strikes relief from those strikes on a posttrial basis.”
Ex parte Floyd, — So.3d at-(Mur-dock, J., concurring in the result).
As Justice Murdock noted, there may be valid reasons for defense counsel’s not raising a Batson objection at trial. The use of plain-error review to initiate a Bat-son inquiry, however, places a trial judge in the precarious position of questioning, in real-time, the trial strategy of defense counsel who fails to initiate such an inquiry.[19] Like Justice Murdock, I question the wisdom of requiring the trial judge to essentially second-guess the defense counsel’s strategy on this issue.

. As Justice Murdock noted in his special writing,
“The Supreme Court’s decision in Batson dealt with discrimination based on race; its decision in J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), dealt with discrimination based on gender. For simplicity, except where the context indicates otherwise, I use such terms as 'Batson analysis,’ 'Batson hearing,’ and 'Batson inquiry’ to refer to the three-step *372 analysis required by both Batson and J.E.B."
Ex parte Floyd, — So.3d at-n. 3 (Mur-dock, J., concurring in the result).

. Justice Murdock cited several examples, however, of federal courts “appl[ying] a plain-error standard in cases where a defendant actually requested the trial court to conduct a Batson analysis but subsequently failed to register an objection to the trial court's decision based upon that analysis.” Ex parte Floyd, - So.3d at-n. 4 (Murdock, J., concurring in the result).

. Indeed, in this case, Sharp’s trial concluded in August 2006. He did not raise a Batson issue until the filing of his petition for a writ of certiorari with the Alabama Supreme Court in May 2009, and the trial court did not conduct a Batson hearing until April 27, 2010 — almost four years after Sharp’s trial had concluded.

. In commenting on this matter, I in no way intend to disparage Sharp’s appellate counsel; even if counsel consciously decided to attempt to bypass this Court by not raising plain-error issues until the case reached the Alabama Supreme Court, our caselaw and the Alabama Rules of Appellate Procedure do not prohibit such a tactic. Moreover, as a general matter, a defendant under a death sentence who ' seeks federal review of a claim must first seek State review of that claim. No appellate counsel can offer perfect representation — in some cases, counsel may obtain new insight between the time this Court considers and the Alabama Supreme Court considers an appeal in which the death penalty has been imposed; in such a case, the raising of additional issues not presented to this Court could be justified.
Even so, I think the instant case illustrates the need for changes to the Alabama Rules of Appellate Procedure as well as to our caselaw regarding plain-error review. If Justice Mur-dock’s position in Ex parte Floyd were the law — i.e., if plain-error review could not be utilized to initiate a Batson claim on direct appeal — the time it has taken to consider Sharp’s appeal would have been substantially shortened. In addition to adopting Justice Murdock’s position in Ex parte Floyd, however, I think the Alabama Supreme Court should consider revising the Rules of Appellate Procedure — including, for example, Rule 39, Ala. R.App. P., which governs certiorari review of capital cases — to generally preclude a petitioner from seeking plain-error review of any issue not first raised on appeal to this Court.

. The Supreme Court's opinion requiring a remand for a Batson hearing was issued on December 4, 2009. The circuit court con *374 ducted the hearing on April 27, 2010, and the case was resubmitted to this Court on July 20, 2010. Sharp filed a brief on return to remand on August 6, 2010. The State then moved to strike the brief because the Alabama Rules of Appellate Procedure do not provide for the filing, as of right, of a brief on return to remand and Sharp had not sought leave to file his brief. Although Sharp subsequently moved for leave to file the brief he had already submitted, this Court — presumably exercising its discretionary authority to disallow additional briefing not permitted as of right by the Rules of Appellate Procedure — granted the State's motion to strike Sharp's brief.
On February 25, 2011, this Court issued an opinion reversing and remanding the trial court’s Batson order; on March 23, 2012, however, this Court withdrew that opinion on application for rehearing and issued a new opinion affirming the trial court's order. The Alabama Supreme Court, as the main opinion notes, summarily vacated our March 23, 2012, opinion and ordered us to allow the parties to brief any issues arising from the Batson order. That briefing was completed on December 17, 2012.

. This is often the same counsel whom the trial judge has appointed to represent the defendant because the judge has confidence that this particular counsel possesses the requisite legal skills, courtroom abilities, and strategic acumen necessary to defend an accused in a capital case.