MURDOCK, Justice
(concurring in the result).
A.
The greatest concern I have arising from my review of this case is the notion *979 that, as a general rule, Batsonin[3] quiries may be initiated on appeal for the first time under a “plain error” standard. A sound case can be made that the three-step evidentiary inquiry prescribed by Batson as a tool for ferreting out purposeful discrimination was intended only for use in “real time” during the trialjn which the alleged discrimination occurs and that the right to initiate a Batson inquiry is waived if not exercised contemporaneously with the selection of the jury . and cannot be revived based on a plain-error review in an appeal after the trial is concluded.
I have found no federal cases that hold to the contrary or that even stand as contrary physical precedent. That is, I have found no federal cases in which the court has used a “plain error” review to initiate a Batson inquiry on appeal when the defendant failed to initiate that inquiry' during the trial.[4] There appear to be good reasons why it is so difficult to find such a case.-
As a threshold matter, I note that Bat-son did not establish a new right, but instead made available to defendants a new process for protecting an established right. The right of a criminal defendant to be freé from purposeful discrimination in the selection of a jury was recognized over a century before Batson was décided in Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880), and reaffirmed in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Thus, when courts refer to a Criminal defendant’s rights under Batson, they are referring to a case in which the United States Supreme' Court recognized a new “evidentiary rule” and an accompanying three-step inquiry for use as a tool in deciding whether dis *980 crimination in jury selection has occurred. See, e.g., Johnson v. California, 545 U.S. 162, 171, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005) (“The first two Batson steps govern the production of evidence that allows the trial court to determine the persuasiveness of the defendant’s constitutional claim.”); Thomas v. Moore, 866 F.2d 803, 804 (5th Cir.1989) (referring to “[t]he evidentiary rule established in Batson ”). For the following reasons, this arguably is not an inquiry that can be initiated on appeal as a result of a plain-error review.
. First, Batson itself, as well as its progeny, appears to contemplate a testing of the prosecutor’s reasons for his or her strikes contemporaneously with the making of those .strikes. Nothing in Batson suggests that the prosecutor is to be required to articulate and defend his or her reasons for striking certain jurors long after the selection process has ended, both sides have accepted the jury, the jurors have performed their service, and a verdict has been-rendered. To the contrary, “[t]he Supreme Court’s analysis in Batson envision[s] a ‘timely objection’ to the government’s use of peremptory challenges. 476 U.S. at. 99_” United States v. Dobynes, 905 F.2d 1192, 1196 (8th Cir.1990).. As the United States Court of Appeals for the First Circuit has-'Stated: “[Cjontempora-neous objection is especially pertinent as to Batson claims, where innocent oversight can so readily be remedied and an accurate record of the racial composition of the jury is crucial on appeal.” United States v. Pulgarin, 955 F.2d 1, 2 (1st Cir.1992). See United States v. Tate, 586 F.3d 936, 943-44 (11th Cir.2009) (“Under the law of this Circuit, a Batson objection must be exercised before the venire is dismissed and the trial commences. United States v. Rodriguez, 917 F.2d 1286, 1288 n. 4 (11th Cir.1990).”); United States v. Romero-Reyna, 867 F.2d 834, 837 (5th Cir.1989) (holding that a Batson objection “must be made before the venire is dismissed and before the trial commences”). In short, “[t]he case law is clear that a Batson objection must be made as soon as possible.” United States v. Contreras-Contreras, 83 F.3d 1103, 1104 (9th Cir.1996) (citing Dias v. Sky Chefs, Inc., 948 F.2d 532, 534 (9th Cir.1991)).
Second, there are sound “policy” reasons why a Batson inquiry, if it is to be conducted, must be conducted at trial contemporaneously with ■ the jury-selection process that is its subject. If the inquiry is launched before the jury is sworn or before the venire is excused, remedies other than reversal and retrial are available. More importantly, in most cases, the type of inquiry contemplated by Batson simply cannot be undertaken in any meaningful way months or years after the trial. Pretrial research regarding jurors and real-time notes taken during voir dire may have been lost, and, more importantly, unwritten memories and impressions of body language, voice inflections, and the myriad of-.other nuances that go into striking-jurors likely will have faded, not only for counsel, but also for' the judge who must evaluate the positions of both the defendant and the prosecutor in the context of his or her own observations at trial (and who, in some cases, will have even left the bench in the meantime).
“[A Batson objection] clearly comes too late- if not made until after the trial has concluded. See Thomas v. Moore, 866 F.2d 803, 804-05 (5th Cir.), cert. denied, 493 U.S. 840, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989); Munn v. Algee, 730 F.Supp. 21, 29 (N.D.Miss.1990). At that point, the Only remedy for purposeful discrimination against black venirepersons is reversal of the conviction, whereas a timely objection allows the trial court to remedy, the discrimination prior to the commencement of trial. See United States v. Forbes, 816 F.2d 1006, 1011 (5th Cir.1987). Moreover, when'the ob *981 jection is not made until well after completion of the jury selection process, the recollections of the parties and the trial court may have - dimmed, making the creation of an adequate record for review more difficult. See [Government of Virgin Islands v.] Forte, 806 F.2d [73] at 76 & n. 1 [ (3d Cir.1986) ].”
United States v. Dobynes, 905 F.2d at. 1196-97.
In Batson itself, the Court recognized that “ ‘a finding of- intentional discrimination is a finding - of fact’ ” and- that “the trial judge’s findings ... largely will turn on evaluation of credibility... .” 476 U.S. at 98 n. 21, 106 S.Ct. 1712 (citation omitted). As the Supreme Court subsequently has observed:
“The trial court has a pivotal role in ’ evaluating Batson claims.' Step three of. the Batson inquiry involves an evaluation of the prosecutor’s credibility, see 476 U.S., at 98, n. 21, and ‘the best-evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge,’ Hernandez [v. New York ], 500 U.S. [352], at 365 [ (1991) ] (plurality opinion). In addition, race-neutral reasons for peremptory challenges often invoke' a juror’s demeanor (e.g., nervousness, inattention), making the trial court’s first-hand observations of even greater importance. In this■ situation, the trial court‘must evaluate not only whether the prosecutor’s demeanor belies a discriminatory intent, but also whether the juror’s demeanor can credibly be said to have exhibited the basis for- the strike attributed to the juror by the prosecutor. We have recognized that these determinations of credibility and demecmor He ‘ “peculiarly within a trial judge’s province,” ’ ibid, (quoting Wainwright v. Witt, 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)), and- we have stated that ‘in the absence of exceptional circumstances, we would defer to [the trial court].’ 500 U.S., at 366.”,
Snyder v. Louisiana, 552 U.S. 472, 477, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008) (emphasis added).
The United States Court of Appeals for the Sixth Circuit emphasizes statements made by the United States Supreme Court in Batson and another case:
“[T]he Batson opinion is replete with references to the trial court’s central role in assessing the facts necessary to conduct the three-step inquiry into allegations of racially discriminatory peremptory challenges. For example, Bat-son maintains that ‘[i]n deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances.’ Id. at 96 (emphasis added). Likewise, the Batson Court vests its ‘confidence’ in ‘trial judges, experienced in supervising voir dire, ... to decide if the circumstances concerning the prosecutor’s use of peremptory challenges create a prima facie case of discrimination.’ Id. at 97, 106 S.Ct. 1712 ([some] emphasis added). Batson further holds ‘the trial court mil then have the duty to determine if the defendant has established purposeful discrimination.’ Id. at 98 ([some] emphasis added). In explaining its assignment of .the Batson inquiry to trial courts, the Court emphasizes that findings in the context wider consideration here will largely turn on evaluation of credibility.’ Id. at 98 n. 21,. 106 S.Ct. 1712. Accordingly, the Court informs ..reviewing courts that they ‘ordinarily should give those findings great deference.’ Id.
“In emphasizing the holdings of Bat-son, the Hernandez [v. New York, 500 U.S. 352 (1991),] plurality explains
“ ‘In the typical peremptory challenge inquiry, the decisive question will be *982 whether counsel’s race-neutral explanation for' a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor’s state of mind based on demeanor and credibility lies peculiarly within a trial judge’s province.’
“Hernandez, 500 U.S. at 365.”
Harris v. Haeberlin, 526 F.3d 903, 913 (6th Cir.2008) (some emphasis added).
The .most pointed conclusion in this regard appears to have been framed by the United States Court of Appeals for the Fifth Circuit, after reasoning as follows:
, “A timely objection and the corresponding opportunity to evaluate the circumstances of the jury selection process are essential to a trial court’s reasoned application of the limitations placed on peremptory challenges by the Batson holding. The decision to exercise a peremptory challenge, in contrast to a challenge for cause, is subjective; and, often, the reasons behind that decision cannot be easily articulated. Determin-' ing whether a prosecutor has acted dis-criminatorily in his use of á'peremptory challenge depends greatly upon the observations of the presiding judge. See Batson, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. Batson ‘requir[es] trial courts to be sensitive to the racially discriminatory üse of peremptory challenges.’ Id. at 99, 106 S.Ct. at 1724. This firsthand review by the trial court is vital to the- balance struck between the historical role and practice of peremptory challenges and the demands of equal protection. See id. at 97, 98-99 & n. 22, 106 S.Ct. at 1723, 1724 & n. 22.”
Thomas v. Moore, 866 F.2d at 805 (emphasis added). For this reason, the Court of Appeals concluded that “[t]he evidentiary rule established in Batson does not enter the analysis of a defendant’s equal protection claim unless a timely objection is made to the prosecutor’s use of his peremptory challenges.” Id. at 804 (emphasis added).
As if the foregoing policy concerns were not enough, without a' general rule requiring the initiation of a Batson challenge at trial, counsel for a defendant charged with a capital offense might decide — and logically so — to . take a “shot” at getting a favorable verdict from a jury about which he or she has some doubts, secure in the knowledge that he or she can always raise a Batson objection on appeal and get a second “shot” if things do not work out with the first jury. See generally, e.g., United States v. Pielago, 135 F.3d 703, 709 (11th Cir,1998) (“The contemporaneous objection rule fosters finality of judgment and deters ‘sandbagging,’ saying an issue for appeal in hope of having another shot at trial if the first one misses.”); United States v. Brown, 352 F.3d 654, 666 n. 12 (2d Cir.2003) (“[W]e do not want to encourage lawyers to, ‘test [their] fortunes with the first jury,’ while knowing there will be a ‘second round in the event of a conviction.’ McCrory [v. Henderson], 82 F.3d [1243,] at 1247 [ (2d Cir.1996) ].”).
A. third — and perhaps the most fundamental — reason for the proposition that plain-error review not be available to-initiate a Batson inquiry on appeal, is the fact that the failure of the trial court to initiate a Batson inquiry, simply, is not an “error,” plain or otherwise, by the trial court. “Error” (that in turn might be deemed “plain error” - in an appropriate case) contemplates a mistake by the court. Specifically, it. necessitates a decision by the court th&t.deviates from a legal rule.
“The first limitation on appellate authority uyider [the federal plain-error rule] is that there, indeed be an ‘error.’ *983 Deviation from a legal rule is ‘error ’ unless the rule has been, waived. For example, a defendant who knowingly and voluntarily pleads guilty in. conform-: •ity with the -requirements of Rule 11[, Fed.R.Civ.P.,] cannot have his-conviction vacated by court of appeals on the grounds that he ought to have had a trial. Because the right to trial is waiv? able, and because the defendant who enters a valid guilty plea waives that right, his conviction without a 'trial is not‘error.’”
United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).
The decision whether to take advantage of the right to generate evidence for consideration by the trial court pursuant to the Batson procedure is a decision for the defendant, not for the trial court, It is a voluntary decision as tp whether to invoke a procedural device that has been made available to defendants in the trial context. In this respect, it is not unlike a request for a jury trial itself or a bequest that the trial judge poll the jurors after a verdict is rendered, or even more analogous, a failure to' conduct voir dire of a prospective juror.[5] Not requesting it may be- a strategic “mistake” by defense counsel, but counsel’s mistake is not the trial court’s “error”
The lack of a request by defense counsel for a Batson review might well occur in the context of circumstances more than sufficient to create-an inference of discrimination by the prosecution, yet the law allows for the possibility that defense counsel .might have reasons for believing that a particular juror or the jury as a whole is acceptable or even that the jury as selected might be more favorable to his or her client than some entirely new jury chosen from an unknown venire. The fact that- counsel, intentionally or by oversight fails to use all the procedural devices available to him or her. in the trial context does not somehow translate into some sort of error, plain or otherwise, on the part of the trial court.[6]
*984 Put differently, the mere existence of the condition that warrants the initiation of a Batson inquiry — a prima facie case of purposeful discrimination — is not the condition that constitutes a reversible error. No criminal conviction has ever been discarded merely because this first step is satisfied, i.e., merely because an inference of discrimination can reasonably be drawn from the circumstances presented; actual, purposeful discrimination must exist. - This first step and, indeed, the entirety of “thé three-step Batson inquiry” has been, described as merely “a tool for producing the evidence necessary-to the difficult task of ‘ferreting out discrimination in selections discretionary by nature.’ ” United States v. Guerrero, 595 F.3d 1059, 1064 (9th Cir.2010) (Gould, J., dissenting) (emphasis added); see also United States v. McAllister, (No. 10-6280, Aug. 1, 2012) (6th Cir.2012) (to same effect) (not published in the Federal Reporter). As this Court has said, a Batson review “shall not be restricted by the mutable and often overlapping boundaries inherent within a Bat-son-analysis framework, but, rather, shall focus solely.upon the ‘propriety of the. ultimate finding of discrimination vel non.’ ” Huntley v. State, 627 So.2d 1013, 1016 (Ala.1992) (emphasis added).
Thus, the “error” that must exist to warrant disturbing the prosecutor’s; peremptory strikes is actual, purposeful discrimination in the selection of the jury. It is this actual, purposeful discrimination then,' ‘ rather than merely a prima facie case for such discrimination, that must be “plain” in the trial-court record if we are to provide a defendant who fails to object timely to a prosecutor’s strikes relief from those strikes on a posttrial basis. See note 6, supra.
Finally, it would not be unfair to say that, if a defendant is to have the benefit of a Batson hearing as a tool in assessing whether purposeful discrimination occurred, defense counsel should be required to-request, that that tool be employed at the time the jury is struck or soon thereafter.' After alii we would be concerned only with that set of cases in which, even under the “plain error” approach employed by the Court of Criminal Appeals in this case, the circumstances that would give rise to an inference of discrimination and thus trigger the right to a Batson hearing would, themselves, be “particularly egregious” and “so obvious that the failure to notice them would seriously affect the fairness or integrity of the judicial proceedings.”[7]
B.
Despite the foregoing concerns, the fact remains that, in the present case, the *985 Court of Criminal Appeals did employ the plain-error rule to allow a Batson inquiry to be requested for the first time on appeal; it remanded the case for the trial court to conduct a Batson hearing and to adjudicate the defendant’s Batson claims. No petition for certiorari review was filed with this Court challenging the Court of Criminal Appeals’ decision remanding this case to the trial court for a Batson hearing. Nor has the State attempted at this late date to mount a challenge to that remand order.
The Court of Criminal Appeals set out its reasons for concluding that the prosecutor did articulate race- and gender-neutral reasons for striking jurors no..5 and no. 58, thus satisfying step two of' the Batson analysis. Floyd v. State, [Ms. CR-05-0935, Aug. 29, 2008] 190 So.3d 940, 966 (Ala.Crim.App.2007) (opinion on return to remand). I am inclined to agree with the reasoning supplied by the Court of Criminal Appeals as to this issue.
The Court of Criminal Appeals took upon itself, however, the task of completing the third step in the Batson analysis based on its own factual findings. The factual findings required to make a‘ step-three Batson decision — i.e., examining the veracity of the prosecutor’s stated reasons, whether those reasons were pretextual and, ultimately, whether the prosecutor as a factual matter actually did engage in purposeful discrimination — are not within the province of an appellate court.
It is understandable that the Court of Criminal Appeals would go, down this path. The members of that court were no doubt less than enamored with the reasons given by the trial court for finding a lack of actual, purposeful discrimination in this Case. First, the trial court stated as a predicate for its approach that the prosecutor could not remember, and did not articulate, any'reasons at all for striking jurors no. 5 and no. 58. This is plainly incorrect.
Based on this erroneous predicate, the trial court proceeded to offer a justification of its own making for the prosecutor’s strikes. This was not the proper task of the trial court.. Moreover, the justification offered by the trial court, upon reflection, amounts to a declaration that the prosecutor knew that the trial court does not allow discrimination, ergo, the prosecutor surely did not discriminate. As the Supreme Court explained in Batson, a general denial of discriminatory motive or a general affirmation of “good faith” is not enough; the prosecutor “must articulate a neutral explanation related to the particular case to be tried”; “the prosecutor must give a ‘clear and reasonably specific’ explanation of his ‘legitimate reasons’ for exercising the challenges.” 476 U.S. at 98 n. 20, and accompanying text. As the Supreme Court also explained in Johnson:
“The Batson framework is designed to produce actual answers (o suspicions and inferences that discrimination may have infected the jury selection process. See 476 U.S., at 97-98, and n. 20. The inherent uncertainty present in inquiries of discriminatory purpose counsels against engaging in needless and imperfect speculation when a direct answer can be obtained by asking a simple question. See Paulino v. Castro, 371 F.3d 1083, 1090 (C.A.9 2004) (‘[I]t does not matter that the prosecutor might have had good reasons ... [;][w]hat matters is the real reason they were stricken’ (emphasis deleted)); Holloway v. Horn, 355 F.3d 707, 725 (C.A.3 2004) (speculation ‘does not aid our inquiry into the reasons the prosecutor actually harbored’ for a peremptory strike).”
545 U.S. at 172, 125 S.Ct. 2410.
In response to the trial court’s unacceptable approach, the Court of Criminal Ap *986 peals took it upon itself, at least as to juror no. 58, to engage in a factual assessment of the veracity of the prosecutor’s stated reasons for striking the juror.[8] In the process, it searches for and locates certain evidence in the record not discussed or evaluated first by the trial court, takes upon, itself the task of.weighing evidence corroborative of the prosecutor’s stated reasons against evidence adverse to those reasons and, ultimately, takes upon itself the task of deciding whether the prosecutor actually did purposefully discriminate. Such tasks, however, clearly belong to the trial court as the fact-finder and are to be performed by the trial judge based on his or her own impressions of the jurors and his or her own observations of, among other things,. what occurred during voir dire and the jury-selection process. Ample authority from the United States Supreme Court and other federal courts, much of which is discussed in Part A of this special writing^ explain why these tasks are consigned to the trial court as the fact-finder.
Even in the. absence of the federal authority discussed in Part A above, our own Alabama cases make clear that factual assessments are to be made by the trial court. It is true, of course, that if, as here, the,trial court’s stated reason is invalid, its judgment can be affirmed by an appellate court on an alternative ground (as the Court of Criminal Appeals attempted to do), but only if that alternative ground is a “valid legal ground.” E.g., Bush v. State, 92 So.3d 121, 134 (Ala.Crim.App.2009) (quoting McNabb v. State, 991 So.2d 313, 333 (Ala.Crim.App.2007), quoting in turn Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala.1988), quoting in turn Tucker v. Nichols, 431 So.2d 1263, 1265 (Ala.1983) (emphasis added)). The ground relied upon by the Court of Criminal Appeals was asserted by the prosecutor in the hearing on remand. A proper evaluation of the veracity of this 'reason required fact-finding. The Court of Criminal' Appeals retrieved information from the record regarding such things as the prosecutor’s normal practices and why the prosecutor did or did not strike other jurors in this case, and then drew its own factual conclusions regarding the presence or absence of actual discriminatory intent by the prosecutor as to juror no. 58. This evaluation of credibility and the weighing of evidence for and against the prosecutor’s stated reason and ultimately the . making of factual findings of the nature made were not the proper tasks of an appellate court. The evidence concerning this matter is not undisputed or so one-sided that the Court of Criminal Appeals, as an appellate court, could make these factual determinations “as a matter of law.” The weighing of evidence and factual assessments necessary to evaluate the reasons stated by the prosecutor as to the strike of juror no. 5 likewise must be made by the trial court.
Thus, we find ourselves in the following position: The particular judgment entered by the trial court regarding the strikes of jurors no. 5 and no. 58 was in error. Therefore," that ' particular judgment, based as it is on an inappropriate approach by the trial court, must be reversed. I too would reverse the judgment of the Court *987 of Criminal Appeals; therefore, I concur in the result.
MALONE, C.J., and BOLIN, J., concur.

. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct 1712, 90 L.Ed.2d 69 (1986). The Supreme Court's decision in Batson dealt with discrimination based on race; its deciáion in J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), dealt with discrimination based on gender. For simplicity, except where the context indicates otherwise, I use such terms as “Batson analysis,” "Bat-son hearing,” and “Batson inquiry” to refer to the three-step analysis required by both Bat-son and J.E.B.

. A number of federal courts have applied a plain-error standard in cases where , a defendant actually requested the trial court to conduct a Batson analysis but subsequently failed to register an objection to the trial court’s decision based upon that analysis. See, e.g., United States v. Charlton, 600 F.3d 43, 50 (1st Cir.2010) (applying plain-error 'review to a trial court’s decision as to the issue of actual discrimination made in response to a Batson challenge at trial, noting that, in applying a plain error standard' of review, "we have observed ... that, ‘[ujnless a discriminatory, intent is inherent in the prosecutor’s explanation, the reason offered will be deemed race neutral’" (quoting United States v. Pulgarin, 955 F.2d 1, 2 (1st Cir.1992))); United States v. Jackson, 347 F.3d 598, 605 (6th Cir.2003) (reviewing a défendant’s Batson claim on appeal for plain error where the defendant initiated the Batson inquiry at trial but “made no response” “when, faced with the government’s seemingly race-neutral explanation,” 347 F.3d at 606, and noting that "[i]f a defendant fails to rebut a race-neutral explanation at the time it was made, the district court’s ruling on the objection is reviewéd for plain error”). The United States Court of Appeals for the Ninth Circuit has, taken the same approach in a case in which a codefendant initiated a Batson inquiry at trial. See United States v. Contreras-Contreras, 83 F.3d 1103, 1105 (9th Cir.1996) (stating, in a case in which a code-fendant made a Batson challenge at-trial, that ”[w]e review for plain error because [defendant’s] counsel not only failed to make an initial objection to the challenge, but also failed to object to the prosecution's volunteered explanation,” and noting that " ‘[p]lain error’ is an actual error that is ■ ‘clear’ and ‘obvious’ under current law” (quoting United States v. Olano, 507 U.S. 725, 734, 736, 113 S.Ct. 1770, 123, L.Ed.2d. 508 (1993)), that "should be employed only in those cases 'in which a miscarriage of justice would otherwise result’ ” (quoting United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985))).

. See, e.g., Ex parte Benford, 935 So.2d 421, 430 (Ala.2006) ("[W]here the trial coiirt fails to conduct a ‘qualifications’ voir, dire -[of prospective jurors] in the presence of the attorneys and the attorneys thereafter fail to conduct their own voir dire to ask the jurors about their qualifications, any lack of qualifications is waived.”).

. Put differently, it might be said that, in the “normal” case, in the absence of a Batson inquiry by which necessary evidence or other information concerning the prosecutor’s subjective intent is generated, the trial court simply will not have before it all the information that it would need for one to be able to say that the court deviated from a legal standard by not sua sponte rejecting a prosecutor's strikes as improperly motivated. See generally Batson, 476 U.S. at 93, 106 S.Ct. 1712 (noting that the Batson inquiry into prosecu-torial motive will be “ 'a sensitive inquiry into such circumstantial and direct evidence ■ of intent as maybe available’ ”) (citations omitted). (In contrast, the federal courts referenced in note 4, supra, were able to review for error, even plain error, the trial courts’ decisions not to disturb the prosecutor’s strikes in those cases' because á Batson inquiry had been initiated at’trial' that did place before the trial court all the information necessary for that court to evaluate the pro$ecu-tor’s motive. The trial court was then in a position to err by not responding to that information correctly.)
This is not to rule out the possibility of'the "abnormal” case — perhaps involving some explicit statement on the part ohthe prosecutor revealing his subjective motivation — in which the facts known to the trial court, even without the benefit of a Batson hearing, would admit of no purpose for the striking of a jury other than racial or gender discrimination. The response of the Utah Supreme • Court to a claim of plain error on the part of the trial court for not sua sponte excusing a juror for cause is instructive:
"[T]he principle of refusing to sanction invited error finds even stronger resonance in the jury1 selection context, where intuition and personal preference necessarily play a strong role. It is generally inappropriate for a trial court to interfere with counsel’s *984 conscious choices in the jury selection process, notwithstanding the existence of a reasonable basis for objecting to those jurors. Only where a juror expresses a bias or conflict of interest that is so strong.or unequivocal as to inevitably taint the trial process should a trial court overrule trial counsel's conscious decision to retain a questionable juror.' Such was not the case here. We therefore hold that the trial court did not commit plain error in declining to overrule Litherland’s counsel’s affirmative, strategic decision to retain [the jurors in, questipn].”
State v. Litherland, 12 P.3d 92, 102 (Utah 2000) (emphasis added). But see State v. Baumruk, 280 S.W.3d 600, 615-16 (Mo.2009).

. Plain error has been defined as:
" ‘[Ejrror that is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings. Ex parte Taylor, 666 So.2d 73 (Ala.1995). The plain error standard applies only where a particularly egregious error occurred at trial and that error has of probably has substantially prejudiced the defendant. Taylor.’ "
Ex parte Walker, 972 So.2d 737, 742 (Ala.2007) (quoting Ex parte Trawick, 698 So.2d 162, 167 (Ala.1997)).

. As to juror no. 58, the Court of Criminal Appeals noted that the prosecutor articulated two reasons for his strike: (1) the jüror was nonresponsive during voir dire, and (2) the prosecution “did not know anything about her.” Floyd, 190 So.3d at 964." It is not clear whether the record reflects that the prosecutor "knew anything” about the background of one of two white jurors who also were nonre-sponsive during voir dire. As to the other white juror, however, the Court of Criminal Appeals states that the prosecutor knew she •had served in a prior -jury that had convicted the accused of a crime, 190 So,3d at 965.