**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GIANG THUY NGUYEN,
*Petitioner-Appellant*,

v.

SCOTT FRAUENHEIM, Warden,
*Respondent-Appellee.*

No. 20-56284

D.C. No.
8:17-cv-01526-
FMO-JPR

OPINION

Appeal from the United States District Court
for the Central District of California
Fernando M. Olguin, District Judge, Presiding

Argued and Submitted June 8, 2022
Pasadena, California

Filed August 22, 2022

Before: MILAN D. SMITH, JR., BRIDGET S. BADE, and
LAWRENCE VANDYKE, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

# SUMMARY[*]

## Habeas Corpus

The panel affirmed the district court's denial of a California state prisoner's habeas corpus petition raising a *Batson* challenge to a jury conviction.

After the prosecutor used peremptory strikes against three Hispanic women during jury selection, petitioner raised an objection pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). The trial court denied the challenge, and the California Court of Appeal affirmed on direct appeal. The California Supreme Court summarily denied review.

*Batson* holds that purposeful racial discrimination in jury selection violates a defendant's right to equal protection, and *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994), holds that gender, like race, is an unconstitutional proxy for juror competence and impartiality. Under *Batson*, to determine when the use of peremptory strikes amounts to unconstitutional discrimination, the defendant first must make a prima facie showing that the totality of the circumstances gives rise to an inference of discrimination. Second, the burden shifts to the State to explain the exclusion. Third, the trial court evaluates the prosecution's explanation for pretext and determines if the defendant established purposeful discrimination. For step one, to show a prima facie case: (1) the prospective juror must be a member of a cognizable group, (2) the prosecutor must use a peremptory strike to remove that juror, and (3) the totality

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

of the circumstances must raise an inference that race or gender motivated the prosecutor to strike.

The panel held that, even if a combined race and gender class such as Hispanic women is a cognizable group for purposes of *Batson*, that new rule would not apply to petitioner's case. The panel concluded that, under circuit precedent in *Cooperwood v. Cambra*, 245 F.3d 1042 (9th Cir. 2001), and *Turner v. Marshall*, 63 F.3d 807 (9th Cir. 1995), the recognition of a mixed race and gender class would be a new rule. *Teague v. Lane*, 489 U.S. 288 (1989), bars the application of new constitutional rules of criminal procedure to cases that were final before the new rule was announced.

The panel further held that the petitioner did not establish a prima facie case of discrimination based on race alone because the totality of the circumstances, including a comparison between the prospective jurors the prosecutor struck and those he did not, did not raise an inference that race motivated the prosecutor to exercise a strike. Accordingly, the California Court of Appeal's decision on *Batson* step one was not contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of facts.

---

## COUNSEL

Raj N. Shah (argued) and Tracy Casadio, Deputy Federal Public Defenders; Cuauhtemoc Ortega, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Petitioner-Appellant.

Jennifer A. Jadovitz (argued), Deputy Attorney General; Steve Oetting, Acting Senior Assistant Attorney General; Rob Bonta, Attorney General; Office of the Attorney General, San Diego, California; for Respondent-Appellee.

## OPINION

M. SMITH, Circuit Judge:

Giang Thuy Nguyen and three co-defendants stood trial in California state court. During jury selection, after the prosecutor used peremptory strikes against three Hispanic women, Nguyen raised an objection pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). The trial court denied the challenge, and the jury convicted him. On direct appeal, the California Court of Appeal affirmed the trial court's denial of the *Batson* challenge. Nguyen now appeals the federal district court's denial of his petition for a writ of habeas corpus. The only issue on appeal is Nguyen's *Batson* challenge. We conclude that even if a combined race and gender class is a cognizable group for purposes of *Batson*, that new rule would not apply to Nguyen's case. Because Nguyen did not make a prima facie showing that the prosecution engaged in a discriminatory use of a peremptory challenge, we affirm the district court's denial of the writ.

## FACTUAL AND PROCEDURAL BACKGROUND

Giang Thuy Nguyen and three co-defendants stood trial in California state court in 2012. Jury selection began with 100 prospective jurors. The prosecution and defense each had forty peremptory challenges. The defense jointly shared twenty peremptory challenges with each defendant having five individual challenges. After the prosecutor struck three Hispanic women (named Romano, DeJesus, and Ocampo),

Nguyen's counsel raised a *Batson* challenge under the state equivalent, *People v. Wheeler*, 583 P.2d 748 (Cal. 1978).[1] The trial court concluded that there was no prima facie showing of discrimination, which is the first step in the *Batson* three-part test. The court commented that "I'm not sure if the third juror . . . had an Hispanic name. She may or may not have been Hispanic. I[t] didn't look like it to me." The court also noted that the prosecution had "passed a number of times where we had Hispanic jurors sitting in the box," and concluded that "under the totality of the circumstances," there was no prima facie case. One Hispanic woman did ultimately serve on the jury, although she was excused due to pregnancy complications one week into the trial.

On direct appeal, Nguyen raised a *Batson* claim, but the California Court of Appeal affirmed the judgment. The court determined that substantial evidence supported the trial court's finding that Nguyen had failed to establish a prima facie case of discrimination in the prosecutor's peremptory challenges to the three Hispanic woman potential jurors. The California Supreme Court summarily denied review.

Nguyen filed a habeas petition in federal district court. A magistrate judge recommended that the district court deny relief. Nguyen objected, but the district court adopted the magistrate judge's findings and denied the petition with prejudice.

The district court granted a certificate of appealability on the *Batson* claim because Nguyen "made a substantial

---

[1] A *Wheeler* motion "serves as an implicit *Batson* objection" and is sufficient to preserve Nguyen's federal constitutional claim. *Crittenden v. Ayers*, 624 F.3d 943, 951 n.2 (9th Cir. 2010).

showing that reasonable jurists could debate whether his constitutional right to equal protection was violated when the state court denied his claim that the prosecutor's use of peremptory strikes against three venirewomen with Hispanic surnames was discriminatory under *Batson v. Kentucky*, 476 U.S. 79 (1986)." We review that claim.

## JURISDICTION AND STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (codified as relevant here at 28 U.S.C. § 2254), sets the standard for federal courts' review of habeas relief on a claim adjudicated on the merits by a state court. Nguyen's appeal raises both factual and legal arguments. On legal questions, we cannot grant relief "unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). On a factual question, we do not disturb a state court's ruling, unless the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The California Court of Appeal's decision denying relief on direct appeal is the relevant decision for our review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). We may only review the record that was before that court when it adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

We review the district court's denial of the habeas petition de novo. *Rhoades v. Henry*, 598 F.3d 495, 500 (9th Cir. 2010).

The district court had jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254. We have jurisdiction to review according to 28 U.S.C. §§ 1291, 2253, and 2254.

## ANALYSIS

### I.

"Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson*, 476 U.S. at 86. "[G]ender, like race, is an unconstitutional proxy for juror competence and impartiality." *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 129 (1994).

To determine when the use of peremptory strikes amounts to unconstitutional discrimination, the Supreme Court in *Batson* established a three-part, burden-shifting test. First, the defendant must make a prima facie showing that the totality of the circumstances give rise to an inference of discrimination. *Johnson v. California*, 545 U.S. 162, 168 (2005) (citing *Batson*, 476 U.S. at 93–94). Second, the "'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes." *Id.* (quoting *Batson*, 476 U.S. at 94). Third, the trial court evaluates the prosecution's explanation for pretext and determines if the defendant established purposeful discrimination. *See id.*; *Miller-El v. Dretke*, 545 U.S. 231, 252 (2005). "If the defendant fails to establish a prima facie case, the burden does not shift to the prosecution, and the prosecutor is not required to offer an

explanation for the challenge." *Tolbert v. Gomez*, 190 F.3d 985, 988 (9th Cir. 1999).

We have established a separate three-part test for step one.  Under that test, to show a prima facie case: (1) the prospective juror must be a member of a cognizable group, (2) the prosecutor must use a peremptory strike to remove that juror, and (3) the totality of the circumstances must raise an inference that race or gender motivated the prosecutor to strike.  *Boyd v. Newland*, 467 F.3d 1139, 1143 (9th Cir. 2006).  "[A] defendant satisfies the requirements of *Batson*'s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Johnson*, 545 U.S. at 170.  "[T]he existence of grounds upon which a prosecutor could reasonably have premised a challenge" is not enough on its own to "defeat an inference of . . . bias at the first step of the *Batson* framework." *Johnson v. Finn*, 665 F.3d 1063, 1069 (9th Cir. 2011) (internal quotation marks omitted).  Comparisons between the struck and unstruck potential jurors is a "tool for conducting meaningful appellate review of whether a prima facie case has been established."  *United States v. Collins*, 551 F.3d 914, 921 (9th Cir. 2009).   The prima facie determination is a mixed question of law and fact.  *Tolbert v. Page*, 182 F.3d 677, 681 n.6 (9th Cir. 1999) (en banc).

## II.

Nguyen argues that Hispanic women constitute a cognizable protected class for *Batson* purposes.   The California Court of Appeal assumed that Hispanic-surnamed women were a cognizable group pursuant to California state law.  However, neither the Supreme Court nor our court has recognized that a combined gender and race class, such as Hispanic women, is a cognizable group at *Batson* step one under federal law.  The federal district court denied the

*Batson* claim on this issue, concluding that evaluating a mixed gender and race class required applying a new rule, which is barred pursuant to *Teague v. Lane*, 489 U.S. 288 (1989). For this reason, the magistrate judge's recommendation, which was ultimately adopted by the district court, limited its inquiry to "whether [Nguyen had] made a prima facie case of ethnicity-based discrimination under *Batson*, without regard to gender," even though Nguyen argued for the class of Hispanic women. Nguyen argues here that recognition of a mixed race and gender class is not a new rule for convictions final after *J.E.B.*, in which the U.S. Supreme Court extended *Batson* to gender.

Nguyen contends that *Batson* and *J.E.B.* together compel the recognition of a mixed race and gender class. Indeed, the Supreme Court's rationale in *J.E.B.* did link race and gender. "Allowing parties to remove racial minorities from the jury not because of their race, but because of their gender, contravenes well-established equal protection principles and could insulate effectively racial discrimination from judicial scrutiny." *J.E.B.*, 511 U.S. at 145. Federal courts have recognized mixed race and gender classes in the Title VII context. *See, e.g.*, *Lam v. Univ. of Haw.*, 40 F.3d 1551, 1562 (9th Cir. 1994) ("[W]here two bases for discrimination exist, they cannot be neatly reduced to distinct components. Rather than aiding the decisional process, the attempt to bisect a person's identity at the intersection of race and gender often distorts or ignores the particular nature of their experiences." (citations and footnote omitted)). Nguyen argues that because both women and Hispanics are already recognized as cognizable groups for *Batson* no more is required as a legal matter to recognize Hispanic women as a cognizable group. Nguyen also contends there are factual reasons for recognizing this group, such as that the U.S., California, and Orange County (where the trial took place)

have a history of discrimination toward Hispanics and that Hispanic women face distinct stereotypes and discrimination.

Nguyen's arguments are unavailing. The issue is controlled by *Cooperwood v. Cambra*, 245 F.3d 1042 (9th Cir. 2001) and *Turner v. Marshall*, 63 F.3d 807 (9th Cir. 1995), *overruled on other grounds by Tolbert*, 182 F.3d. In *Cooperwood*, we considered whether the prosecution had exercised an illegal peremptory challenge based on the juror's race and gender in violation of *Batson* and *J.E.B*. In that case, the challenge concerned a black man. We decided that "[i]f we were to determine today that African-American males form a cognizable group, it would be too late to help Cooperwood because 'the new rule could not be applied retroactively to petitioner's case.'" *Cooperwood*, 245 F.3d at 1046 (first quoting *Gomez*, 190 F.3d at 988 n.1; and then citing *Teague*, 489 U.S. at 305–06). *Teague* bars the application of new constitutional rules of criminal procedure to cases that were final before the new rule was announced. 489 U.S. at 310. We did proceed, however, to analyze the *Batson* claim on the basis of discrimination against African Americans without regard to gender. *Cooperwood*, 245 F.3d at 1046–48.

Similarly in *Turner*, the defendant argued that the exclusion of black men was the basis for a *Batson* challenge. We noted that "neither the Supreme Court nor the Ninth Circuit has recognized that the combination of race and gender, such as 'black males,' may establish a cognizable group for *Batson* purposes." *Turner*, 63 F.3d at 812. We determined that "[a]lthough the issue of whether African-American men could constitute a *Batson* class likely is worthy of consideration in light of recent holdings that gender as well as race is an impermissible basis for

peremptory challenges . . . we decline to consider this issue because any new rule defining what constitutes a 'cognizable group' could not be applied to Turner's case" pursuant to *Teague*. *Id.* (citations omitted). The court instead limited its "inquiry to whether Turner has made a prima facie case of impermissible exclusion of African-American jurors as a class, with no reference to gender." *Id.*

Following these cases, even if we agreed that a combined race and gender class should be cognizable, we cannot apply that new rule on habeas review because we are bound by circuit precedent.

## III.

Because we cannot apply a new constitutional rule and so cannot evaluate Hispanic women as a class, we must "limit our inquiry to whether Appellant has made a prima facie *Batson* case on the basis of race only." *Cooperwood*, 245 F.3d at 1047. Nguyen argues that there was a prima facie case of discrimination based on race alone, but we hold that there was not.

As a reminder, the first step of *Batson* is analyzed based on a three-part test: (1) the prospective juror must be a member of a cognizable group, (2) the prosecutor must use a peremptory strike to remove that juror, and (3) the totality of the circumstances must raise an inference that race motivated the prosecutor to strike. *Boyd*, 467 F.3d at 1143. Steps one and two are not contested in this case. At issue is whether the totality of the circumstances raises an inference that race motivated the prosecutor to exercise a strike. Because the trial court did not find an inference of discrimination, it did not proceed to steps two and three of *Batson*. Further, the prosecutor did not proffer neutral, nondiscriminatory explanations for the strikes and the judge

did not determine if Nguyen established purposeful discrimination.

Often courts look to statistics and patterns of strikes to determine if a defendant has shown an inference that race motivated the prosecutor to exercise a strike. "The Constitution forbids striking even a single prospective juror for a discriminatory purpose," *Flowers v. Mississippi*, 139 S. Ct. 2228, 2244 (2019), but generally striking only one prospective juror who belongs to a protected group is not enough to draw an inference without other evidence, *see Wade v. Terhune*, 202 F.3d 1190, 1198 (9th Cir. 2000). Nor is striking two prospective jurors. *United States v. Hernandez-Quintania*, 874 F.3d 1123, 1129 (9th Cir. 2017). However, eventually, patterns emerge that do lead to an inference that strikes are motivated by race. *See Flowers*, 139 S. Ct. at 2244–45.

In addition to statistics, the court "consider[s] any other relevant circumstances brought to [its] attention that may support or refute an inference of discriminatory purpose." *Williams v. Runnels*, 432 F.3d 1102, 1107 (9th Cir. 2006) (internal quotation marks omitted). Comparing challenged and unchallenged jurors is a "tool for conducting meaningful appellate review of whether a prima facie case has been established." *Collins*, 551 F.3d at 921. We can look to the entire trial record, even after defense counsel made the motion. *See Wade*, 202 F.3d at 1198 ("[W]e do not believe that the only relevant time at which to assess the would-be *prima facie* case is the time of the challenge."). Further, the defendant and the excluded juror do not need to be of the

same race or ethnicity for a successful *Batson* challenge.**[2]** *Flowers*, 139 S. Ct. at 2243.

At the time of the *Batson* motion in this case, the prosecutor had used three of his first five peremptory strikes against Hispanic people and struck three out of four Hispanic potential jurors.**[3]** These proportions could certainly contribute to an inference of discrimination. However, these numbers are somewhat small to rely on alone. *See, e.g.*, *Fernandez v. Roe*, 286 F.3d 1073, 1078 (9th Cir. 2002) ("[t]wo challenges out of two [African American] venirepersons are not always enough to establish a *prima facie* case" because "the numbers are so small (and, hence, potentially unreliable)"); *Shirley v. Yates*, 807 F.3d 1090, 1101 n.7 (9th Cir. 2015) ("[W]hen a *Batson* challenge is made after the first minority to be called into the jury box is peremptorily struck but well before jury selection concludes, it would be erroneous to find that a *prima facie* case had been made merely because *at the time of the challenge* the prosecutor had struck 100% of minority veniremembers.").

Looking at the totality of the circumstances, as we must, a comparison between the prospective jurors the prosecutor

---

**[2]** Although it is not relevant that Nguyen is not Hispanic, we note that Nguyen's trial counsel was Hispanic so it is possible that the prosecutor held the biased view that Hispanic jurors would favor defense counsel and his client.

**[3]** We determine that these potential jurors were Hispanic based on the parties' representations and the jurors' last names. A *Batson* challenge focuses on the perception of the race or ethnicity of the prospective jurors, not their actual race or ethnicity. *See United States v. Guerrero*, 595 F.3d 1059, 1063 n.3 (9th Cir. 2010). Although a Hispanic seeming last name is not necessarily a good proxy for ethnicity, that issue is not raised in this case and, in any event, last names would contribute to the perception of ethnicity.

stuck and those he did not does not support an inference of discrimination. Before the motion, the prosecutor repeatedly accepted the panel with a Hispanic person (Garcia) on it and that Hispanic person was seated in the potential jury when Nguyen made his *Batson* motion. *See Gonzalez v. Brown*, 585 F.3d 1202, 1210 (9th Cir. 2009) (reasoning that Black jurors remaining on the panel at time of motion "may be considered indicative of a nondiscriminatory motive" (quotation omitted)). Soon after the *Batson* motion, another Hispanic person (Carrasco) was seated in the jury box. The prosecutor did not strike that individual and accepted the jury with both Garcia and Carrasco seated. The prosecutor passed multiple times while another Hispanic person sat in the jury box. And one woman with a Hispanic surname ultimately made it onto the jury, although she was later excused for medical reasons. Without statistics, comparisons, or anything else suggesting an inference of discrimination, we can find none.

Although relevant to the later steps of the *Batson* inquiry, there were also obvious, nondiscriminatory reasons for removing Romano, DeJesus, and Ocampo. *See Wade*, 202 F.3d at 1198–99 (considering reasons in the record for strikes at step one). DeJesus's brothers were convicted gang members and she visited them in prison. Similarly, Romano's nephew was incarcerated for gang involvement. Although they were not close, she offered information about him in response to a question about other "significant" information as it "pertains to this case that you're not telling us that we would really want to know," suggesting that she viewed her nephew's incarceration as important. Gang membership was also particularly important in this case because the victim and the defendants were involved with gangs. None of the ultimately empaneled jurors had family members who were ever in gangs and both sides struck

jurors with gang experience. The questioning of Ocampo reveals that the prosecutor perceived her as susceptible to persuasion. She was young and unmarried with no children. The prosecutor used peremptory strikes on other unmarried potential jurors without children and each empaneled juror had children and was married or had been married. Lack of maturity and life experience are nondiscriminatory reasons for a peremptory strike. There were obvious race-neutral reasons to challenge each of the three jurors and those reasons, gang connections and youth, were applied across the board.

In light of the above, the California Court of Appeal's decision on *Batson* step one was not contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of facts.

## CONCLUSION

We affirm the district court's denial of the writ of habeas corpus.[4]

**AFFIRMED.**

---

[4] Nguyen also argues that the California Court of Appeal's presumption, citing *People v. Salcido*, 44 Cal. 4th 93, 136–137 (2008), that peremptory challenges are "exercised for a nondiscriminatory purpose" is contrary to *Batson*. Because we affirm under either AEDPA deference or de novo review, we do not decide this issue.